# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:12-cr-043 |
| vs. | Judge Timothy S. Black |
| RONALD L. BYRD (1), | |
| Defendant. | |

## ORDER DENYING DEFENDANT'S
## MOTION FOR RECONSIDERATION (Doc. 52)

This criminal case is before the Court on Defendant's motion for reconsideration. (Doc. 52).

## I.  BACKGROUND

In March 2012, a federal grand jury returned a nine-count indictment charging Defendant Ronald L. Byrd with: conspiracy to commit bank and wire fraud, in violation of 18 U.S.C. § 1349 (Count 1); wire fraud, in violation of 18 U.S.C. § 1343 (Counts 2-7); and bank fraud, in violation of 18 U.S.C. § 1344 (Counts 8-9).[1]  (Doc. 4).  On May 31, 2012, Defendant appeared before this Court and pled guilty to Count 1 of the Indictment, pursuant to a Rule 11(c)(1)(C) plea agreement.  (Docs. 18, 20).  The binding plea agreement proposed a sentence of five-years probation, restitution in an amount no less than $225,000 and no more than $311,395 (to be determined by the Court), no fine, and payment of the $100 special assessment.  (Doc. 18 at ¶ 4).  The plea agreement also required Defendant to surrender his State of Ohio real estate broker's license on or before

---

[1] The Indictment also charged one co-defendant, Scott Brauer, in Counts 1-2 and 5-9.  (Doc. 4). Defendant, however, was charged under all nine counts.  (*Id.*)

the date of sentencing. (*Id*. at ¶ 17). The Court accepted Defendant's guilty plea, but deferred acceptance of the plea agreement pending review of the Presentence Investigation Report. (Doc. 20).[2]

The case proceeded to a sentencing hearing on October 4, 2012, during which the Court accepted the Rule 11(c)(1)(C) plea agreement and, accordingly, sentenced Defendant to five-years probation, payment of $225,000 in restitution, no fine, and a $100 special assessment. (Docs. 32, 34). In addition to the standard terms of supervision, the Court imposed the following special conditions: (1) Defendant must complete a consumer counseling program at the direction of the probation officer; (2) Defendant must allow the probation officer access to all requested financial information; and (3) Defendant "shall surrender his real estate broker's license and is not permitted to be employed in any position related to the real estate business." (Doc. 34 at 3).

On November 6, 2012, within one month of Defendant's sentencing, the Court received a Non-Compliance Report from Defendant's Probation Officer. (Doc. 38). The Probation Officer reported that he met with Defendant on October 17, 2012, at which time Defendant unequivocally advised that he had surrendered his real estate broker's license to the Ohio Department of Commerce's Division of Real Estate & Professional Licensing (the "REPL Division") on October 4, 2012 and that he had notified the Dayton

---

[2] Notably, at the time of Defendant's change of plea hearing, the Court also addressed whether Defendant's own-recognizance bond should be revoked, based upon his Pretrial Officer's Petition for Action and to Show Cause. (Docs. 19, 20). Specifically, the Pretrial Officer reported that Defendant violated the conditions of his release by "fail[ing] to consent to third party disclosure to any client, potential client, or potential employer, concerning the alleged instant offense at the discretion of the U.S. Pretrial Services Officer." (Doc. 19). The Court ultimately agreed not to revoke bond if Defendant complied with the disclosure requirements no later than close-of-business the following day. (Doc. 20).

2

Board of Realtors of the same on October 12, 2012, although he was not provided with any form of verification.  (*Id*. at 1).  However, the Probation Officer reported that on October 30, 2012, he received a telephone call from an Investigative Supervisor at the REPL Division, informing him that Defendant had not only failed to surrender his broker's license and report his felony conviction, but that Defendant came to the REPL Division office and made misleading statements that he had "lost" his license and wished to place it in <u>inactive</u> status, thereby allowing him reactivate it at any time.  (*Id*.)  The Investigative Supervisor also informed the Probation Officer that two formal complaints had been filed against Defendant since October 1, 2012, alleging that he failed to return security deposits.  (*Id*.)  Accordingly, the REPL Division was pursuing administrative charges against Defendant and, at minimum, sought to revoke his broker's license.  (*Id*. at 2).  The Probation Officer's report recommended that the Court take no action at that time, pending further investigation, and advised that he would monitor the situation and report to the Court as necessary.  (*Id*.)  The Court concurred with the Probation Officer's recommendation (*id*.), and nothing further was received regarding the incident.

On September 23, 2015, the Probation Officer submitted a Non-Compliance Summary reporting that, on August 25, 2015, Defendant was indicted in Montgomery County, Ohio on one count of grand theft, a third-degree felony.  (Doc. 39).  The Court concurred with the Probation Officer's recommendation that no action be taken pending disposition of the new charge.  (*Id*.)  On November 6, 2015, the Court received from the Probation Officer a petition to revoke probation, indicating that Defendant had pled

3

guilty to the charge of grand theft in the State Court case. (Doc. 40). The Probation Officer subsequently amended the petition on December 4, 2015. (Doc. 46).

The amended petition alleged three violations, including: (1) violation of the mandatory condition prohibiting Defendant from committing another federal, state, or local crime (convicted in State Court for grand theft); (2) violation of the special condition requiring Defendant to surrender his real estate broker's license and to refrain from employment in any position related to the real estate business (failed to surrender his license and continued to engage in the real estate business); and (3) violation of the standard condition requiring Defendant to truthfully answer all inquiries by the Probation Officer and follow the instructions of the Probation Officer (failed to report his contact with law enforcement and provide updates regarding the State Court case).

A summons was issued and Defendant appeared before the Court on December 9, 2015. (Doc. 47; Min. Entry & Not. Order, Dec. 9, 2015). Defendant initially denied all violations, but subsequently appeared on January 14, 2016 and admitted to Violations 2 and 3, in exchange for the withdrawal of Violation 1. (Min. Entry & Not. Order, Dec. 9, 2015; Doc. 49). The Court accepted Defendant's admissions of guilt and granted Defendant's request for a continuance before imposing sentence on revocation, in order to allow defense counsel to fully prepare and file a sentencing memorandum. (Doc. 49).

The case proceeded to a final disposition hearing on February 22, 2016. (Doc. 51). As authorized by 18 U.S.C. § 3565(a), and having fully considered the factors set forth in 18 U.S.C. § 3553(a), this Court determined that revocation was appropriate in the instant case and imposed a term of six-months imprisonment, followed by five-years of

4

supervised release. (Docs. 51). Following the hearing, Defendant filed the instant motion for reconsideration on March 3, 2016 and a notice of appeal on March 7, 2016. (Docs. 52, 53). The Court entered its Judgment on March 21, 2016.[3] (Doc. 55).

## II.  STANDARD OF REVIEW

"In the sentencing context, there is simply no such thing as a 'motion to reconsider' an otherwise final sentence." *United States v. Dotz*, 455 F.3d 644, 648 (6th Cir. 2006).[4] Pursuant to 18 U.S.C. § 3582(c), "[t]he court may not modify a term of imprisonment once it has been imposed," except under the following limited circumstances: (1) upon motion of the Bureau of Prisons if "extraordinary and compelling reasons" warrant a reduction *or* if the inmate, having already served at least thirty-years imprisonment for an offense, has reached an advanced age and no longer poses a risk to society; (2) modifications pursuant to Rule 35 of the Federal Rules of

---

[3] To be timely, Defendant's Notice of Appeal needed to be filed within fourteen days after the entry of judgment; however, "[a] notice of appeal filed after the court announces a decision, sentence, or order--but before the entry of the judgment or order--is treated as filed on the date of and after the entry." Fed. R. App. P. 4(b).

[4] In *United States v. Townsend*, the Seventh Circuit explains the limited role of motions for reconsideration in criminal cases, as well as how The Sentencing Reform Act of 1984 eliminated reconsideration in the sentencing context:

> No federal rule or statute allows a motion to reconsider in a criminal case, but reconsideration motions are accepted as a common-law practice. … But Congress long ago abrogated this common-law practice in the sentencing context. The Sentencing Reform Act of 1984 explicitly prevents district courts from "modify[ing] a term of imprisonment once it has been imposed" except in three narrow situations [set forth in 18 U.S.C. § 3582(c)]. … [T]he limitation [imposed] in § 3582(c), preventing courts from modifying a term of imprisonment except as provided by Rule 35 or statute[,] … addressed Congress's concern that judges were introducing uncertainty into the sentencing process by exercising their common-law power to revise sentences.

762 F.3d 641, 645-47 (7th Cir. 2014) (citations omitted).

5

Criminal Procedure; and (3) sentencing reductions for defendants serving a term of imprisonment imposed based upon a guideline range subsequently lowered by the United States Sentencing Commission.  18 U.S.C. § 3582(c).

Further, the Court's ability to modify a sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure is limited to two circumstances: (1) under subsection (a), "the court may correct a sentence that resulted from arithmetical, technical, or other clear error" within fourteen days after sentencing; and (2) under subsection (b), "the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person," but only "[u]pon the government's motion," and subject to further conditions if said motion is made more than one year after Defendant was initially sentenced.  Fed. R. Crim. P. 35(a), (b).

### III.  ANALYSIS

Defendant raises two arguments in support of his motion for reconsideration. (Doc. 52).  First, Defendant asserts that the Court was "without the statutory authority" to "[m]odify, [s]eize, [r]estrain or [i]mpound" the funds in defense counsel's trust account for payment toward federal restitution.  (*Id*. at 1-2).  Second, Defendant asks that the Court "reconsider the collateral effects [that] revoking his probation [will have] on third parties," namely, the restitution victims and Defendant's girlfriend.  (*Id*. at 2-3).  The Court reviews both arguments for "arithmetical, technical, or other clear error," pursuant to Rule 35(a), as no other exception for 'reconsideration' is implicated.

#### A.  Payment of Federal Restitution

##### *1.  The Court's Authority Regarding Restitution*

Defendant argues that, "the Court may not adjust the Restitution until the Court on its Motion requests that it be adjusted under 18 USC § 3664(k) and (o)." (Doc. 52 at 2). As an initial matter, Defendant appears to misapprehend the concept of 'the Court's own motion,' which neither requires the Court to file a formal motion, nor "request" permission of an outside source. Indeed, such is the very nature of the Court's authority to act *sua sponte* (*i.e.*, on its own motion).[5]

Pursuant to 18 U.S.C. § 3664(k), "[u]pon receipt of the notification [of any material change in Defendant's economic circumstances], **the court may, on its own motion … adjust the payment schedule**, or require immediate payment in full, as the interests of justice require." (Emphasis added). Contrary to Defendant's assertion, the fact that the statute specifies that the Court may adjust the payment schedule "on its own motion" does not *divest* the Court of authority to act but, in fact, *emphasizes* the Court's authority to act *sua sponte*.[6] Further, upon notice of a change in defendant's economic circumstances, the Court does not need to seek permission, nor does 18 U.S.C. § 3664 require the Court to hold a hearing, in order to adjust the restitution payment schedule.

---

[5] Black's Law Dictionary defines '*sua sponte*' as follows:

> [Latin 'of one's own accord; voluntarily'] • Without prompting or suggestion; on its own motion <the court took notice sua sponte that it lacked jurisdiction over the case>

Sua Sponte, Black's Law Dictionary (10th ed. 2014).

[6] The Second Circuit responded to a nearly identical argument regarding the Court's authority to *sua sponte* modify a restitution schedule, stating that, "[t]here is no doubt that such authority is now expressly recognized in … the MVRA, which states that a district court 'may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.'" *United States v. Kyles*, 601 F.3d 78, 83 n.7 (2d Cir. 2009) (citing 18 U.S.C. § 3664(k)).

7

Moreover, pursuant to 18 U.S.C. § 3565, upon <u>revocation</u> of probation, the Court does not *modify* the terms of probation, but instead *resentences* Defendant.  Section 3565(a) provides that:

> If the defendant violates a condition of probation at any time prior to the expiration or termination of the term of probation, the court may, after a hearing pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure, and after considering the factors set forth in section 3553(a) to the extent that they are applicable--
>
> (1) **continue** him on probation, with or without extending the term or **modifying** or enlarging the conditions; or
>
> (2) **revoke** the sentence of probation and **resentence** the defendant under subchapter A.

18 U.S.C. § 3565(a) (emphasis added).[7]  In short, modification is an option available if the Court chooses to *continue* probation.  *Id*.  But "when sentencing follow[s] the *revocation* of probation, a district court is free to impose any sentence within the statutory maximum for the original offense."  *United States v. Cole*, 406 F. App'x 967, 970 (6th Cir. 2011).  Accordingly, this Court had the same authority to order the amount and manner of restitution payments, *see* 18 U.S.C. § 3664(f), upon revocation of probation as it was the day Defendant was initially sentenced.

As the Court had the authority to revoke probation and adjust the restitution payment schedule in both the modification and resentencing contexts, the Court finds no "arithmetical, technical, or other clear error," and reconsideration is not warranted.

---

[7] *See also*, USSG Ch.7, Pt.A, intro. comment. (backg'd. 2(a)) ("Under current law, if the court finds that a defendant violated a condition of probation, the court may continue probation, with or without extending the term or modifying the conditions, or revoke probation and impose any other sentence that initially could have been imposed" (citing 18 U.S.C. § 3565)).

8

### *2. Order to Preserve Funds for Federal Restitution Obligation*

This Court was not without authority to order that the $7,900 in defense counsel's client trust account be preserved, until released by the bankruptcy court, for payment toward Defendant's pre-existing federal restitution obligation.[8] Additionally, Defendant's assertion that the Court is "effectively ordering forfeiture and impounding said funds" is neither an accurate legal characterization, nor a compelling argument.

To clarify, the conduct underlying Defendant's federal conviction (*i.e.*, conspiracy to commit bank and wire fraud), from which Defendant's federal restitution obligation arose, occurred as early as September 2006. (Doc. 18 at 9-10). The conduct underlying Defendant's State Court conviction of grand theft, occurred between May 10, 2012 and June 30, 2012. *See State of Ohio v. Ron Lee Byrd*, Montgomery C.P. No. 2015 CR 1805 (filed Aug. 25, 2015). Additionally, the federal restitution order was entered on October 17, 2012 (Doc. 34), whereas Defendant's State Court restitution order was entered in November 2015. In short, the federal restitution obligation predates Defendant's State Court restitution obligation.

Since the time of his initial federal sentencing on October 4, 2012, Defendant has been making meager $100 per month payments toward his federal restitution. This Court first learned of the potential availability of the $7,900 from Defendant's own Sentencing

---

[8] Defendant filed for Chapter 7 bankruptcy on November 30, 2014. *In Re: Ronald Byrd*, No. 3:14-bk-34237 (Bankr. S.D. Ohio Nov. 30, 2014). As defense counsel conceded during the final revocation hearing, there remains an ongoing dispute in the bankruptcy case as to whether the $7,900 constitutes pre-petition or post-petition income. (Doc. 54 at 6:25-8:6). Regardless, the fact remains that Defendant, after being placed on probation, acquired thousands of dollars, at minimum, which 'material change in economic circumstances' he failed to disclose to this Court and, instead, continued making $100 monthly payments.

9

Memorandum.  (Doc. 50).  Specifically, Defendant stated that he had been working to pay back the State Court victims and that "he tried to settle the matter and has the $7,900.00 currently in counsel's trust account." (*Id*. at 2).  Defendant then immediately states that "[c]ounsel anticipates that the funds will eventually be available, but in the meantime, [Defendant] is ordered to pay $500.00 per month [to the State Court victims and] … Defendant foresees he will be able to redirect that money toward the restitution he owes in this case." (*Id.*)

However, this Court is not precluded from ordering Defendant to pay his federal restitution, merely because he has, without seeking leave of this Court, agreed to divert his funds to other restitution victims, whose losses arise from entirely separate and subsequent conduct.  *See United States v. May*, 500 F. App'x 458, 462 (6th Cir. 2012) ("restitution ordered as part of a criminal sentence is punitive rather than compensatory in nature … [and] private individuals should not be allowed to thwart the penal goals of the criminal justice system by entering into releases or settlements with wrongdoers") (citing *Kelly v. Robinson*, 479 U.S. 36, 52 (1986)).  Further, "an order of restitution made pursuant to sections … 3663, 3663A, and 3664 of [Title 18], is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986." 18 U.S.C. § 3613(c).  Thus, Defendant was not free to allocate his funds to other purposes or assign priority to subsequent debts, over his pre-existing federal restitution obligation.

Regardless, at the final revocation hearing, in addressing restitution during pronouncement of Defendant's sentence, the Court stated that:

> The money in the trust account of $7900 should be earmarked for federal restitution. It shouldn't be released otherwise without authority of this Court. If the bankruptcy court tells you to do something other than apply it to federal restitution, <u>file a motion with me.</u>

(Doc. 54 at 12:17-21) (emphasis added). The Court also had the following exchange with defense counsel:

> DEFENSE COUNSEL: … I just wanted to clarify if it -- that it can also be remuner-- disbursed to Montgomery County court, if possible, as well.
>
> THE COURT: <u>Federal court takes precedence. It came first. That's my position.</u> If bankruptcy court finds otherwise and orders you or releases you to distribute it, <u>you can file a motion with me if there's a conflict.</u> I've told you what I expect. Anything further?
>
> DEFENSE COUNSEL: No, Your Honor.

(*Id*. at 14:13-22) (emphasis added). Implicit in the above-statements is that the Court left open the possibility that the funds may be put to a use other than federal restitution—namely, state restitution. Additionally, the Court explicitly and repeatedly emphasized that the money was not to be dissipated by attorney fees. (*See id.* at 7:23-9:1). In sum, and as should have been clear to defense counsel, this Court's primary concern at the time of the final revocation hearing was preserving the funds, primarily by ensuring that the money would neither be invaded for attorney fees, nor be returned to Defendant (as this Court is wholly unimpressed—to say the least—with Defendant's reliability).

11

The Court finds no "arithmetical, technical, or other clear error" in its decision to order the preservation and ultimate payment of $7,900 toward Defendant's federal restitution obligation.  Accordingly, reconsideration is not warranted.

### B.  Collateral Consequences of Defendant's Sentence

Next, Defendant asks that the Court reconsider its decision to revoke probation, in light of the "collateral consequences" of sentencing Defendant to a term of imprisonment. (Doc. 52 at 2-3).  Specifically, Defendant states that serving a term of imprisonment will result in him losing his job and therefore he will not be able to make payments toward his federal and state restitution and, further, his absence will impose significant financial hardship on his girlfriend, who relies on Defendant's monthly income.  (*Id.*)

First, "collateral consequences" are an impermissible basis for downward variance in criminal sentencing.  *United States v. Musgrave*, 761 F.3d 602, 608 (6th Cir. 2014) ("when a district court varies downward on the basis of the collateral consequences of the defendant's prosecution and conviction, the defendant's sentence will not reflect the seriousness of the offense, nor will it provide just punishment").  Second, the Court appropriately considered all relevant and permissible factors in fashioning a sentence that is sufficient, but not greater than necessary, to accomplish the purposes of sentencing.  As there is no "arithmetical, technical, or other clear error," present, reconsideration is not warranted.

Additionally, it bears noting that Defendant's offense of conviction carried a statutory maximum term of **thirty years imprisonment** and, at the time of his initial sentencing, Defendant's guideline range was **twenty-four to thirty months**.  However,

12

this Court chose to accept the Rule 11(c)(1)(C) plea agreement entered into by the parties and, accordingly, varied significantly to sentence Defendant to five years of probation. In other words, Defendant was given the opportunity to show this Court and the community that he can, and will be, a productive, honest, law-abiding member of society. However, rather than take advantage of the opportunity, Defendant has obfuscated, ignored specific orders of the Court, and continued with his unscrupulous business practices whenever it suited him. It is ironic that Defendant, who appears to have never considered the consequences of his own actions, nor shown consideration for the harm he brought on this community, now asks that the Court consider the consequences of his actions—and as a basis for reducing his sentence, no less.

In short, there is no basis for reconsideration here, nor would reconsideration inure to Defendant's benefit.

## IV. CONCLUSION

Based upon the foregoing, Defendant's motion for reconsideration (Doc. 52) is **DENIED.**

    **IT IS SO ORDERED**.

Date: 3/21/2016

Timothy S. Black
United States District Judge